We are ready for the next case, which is 18-8019, Franken v. Zinke. Counsel, please proceed. Good morning, Your Honor. My name is Micah Farge. May it please the Court? Mr. Vassallo, I'm counsel for Plaintiff Appellant Kevin Franken. This case is not a case about employment discrimination, and that's fundamentally where the lower court went wrong. This is a question about whether Mr. Franken has any remedy for the wrongs that he's claiming against the U.S. government and his former supervisor, David Halleck. There's no remedy under the CSRA, the Civil Service Reform Act, for conversion. That is fundamentally what Mr. Franken is claiming here. He is claiming that his property was stolen at the conclusion of his employment and never returned to him. Now, the property at issue here were computer files, which under Wyoming law, the courts recognize as just any other type of property. So you could think of it as if it was a precious family portrait or a lifetime award for an LGBTQ service, which was his cause. This is what he sought at the conclusion of employment and afterwards from his former employers. This was not a wrong that the government committed as retaliation for any employment act, for discrimination for anything, any protected activity or action. Those allegations are referenced in the complaint because Mr. Franken had a prior claim against the U.S. government through the EEOC, which he settled. So that framework of discrimination retaliation that ultimately led up to his departure from the EEOC is not relevant to his claims for conversion. These are property claims, not employment claims. Let me ask you a question. So assume that there was no policy or practice of the government at Yellowstone to allow employees to keep personal stuff on the government computers. Would you have a claim then? I think the property is still his, just as if it was any other physical item that he left there. Would he perhaps have violated a rule to leave his property on the computer? Perhaps. But that's not the allegation here anyway. I understand that. We're assuming some things to discuss it. I think perhaps if there was a policy that led to the automatic deletion of everything on termination, and then he didn't go after the property until after that happened, then I think it would be a harder argument to make. Right. So your position is that without a policy of the U.S. government allowing it, that a person can store stuff on a government computer, and then once they're terminated or they quit or whatever the case may be, they have a property right to go get that off of the government computer? Without a policy, I think so. And I don't think that would be contrary to any other type of property that an employee might leave on the premises. I'm not aware of any law that would forfeit property just because it was left without some sort of procedural or policy right. Okay. What if there was a policy that prohibited it? I think there would be grounds for discipline or termination, but as long as the property is still there, I think it's his. He could try to obtain it through a FOIA request, but I think as long as the purpose that the government is doing is to intentionally keep it and deprive him of the use of it so long as it exists, then he has a property interest in claiming conversion for it. Okay. Your position basically is that he created property by making those entrants in his computer. Is that right? Some of it I believe he created. The property he's asking to return is what he put in, and it became his property by having put it there. So these were not all items that he created using government equipment. It was simply stored on there from his actions outside of the employment context. These weren't government files. But it isn't property until he's reduced it to an entry. It's the enter into the computer system that turns it into property, isn't it? It isn't the information. It is the content of the material in the computer. I think the property can exist in different forms. Property can exist on a digital camera or cell phone separate from what was on the government computer, and I think those are both types of property. The problem here is what he brought into his government computer was his property independent of and created independently of his work at the government or even this equipment. But what he's asked for is the entry that's on his computer. And that's what the property is that he's after is the entry, not the ideas that's contained in it. Not the ideas, but I would take issue with the word entry because that to me connotates more like a database or something. These are pictures. These are files. These are coherent items that could be printed off, and then they would be properly printed off. They happen to be stored and formed in electronic format and maintained on his computer. Why doesn't Bush versus Lucas foreclose your Bivens claim? Well, this, essentially all of his claims are arising after and outside the context of his employment. So the conversion claim is not part of his employment. It stems from his employment though. Not as soon as he was terminated. So this isn't an issue, this isn't a fight over an unlawful turning off of access. It's not depriving him of the access of it. The property being on his computer, and I'm looking at a quote now from Bush, arises out of the employment relationship, unquote. So you're not saying that the property that is on his computer did not arise out of that employment relationship? Not out of it. If he wasn't sitting at his desk where he was employed, he couldn't have put the stuff in the computer, right? Well, they weren't created pursuant to his employment. I don't think that language doesn't necessarily contemplate that it had to be done in the course of his job. It just says that he's sitting there, he's only sitting there by virtue of arising out of his employment relationship, and he takes certain acts accordingly. So I think that argument would then preclude him from recovering a physical item that he left too. If he physically places, again, a picture, some other precious item, artwork, whatever it is. Well, I'm not sure that that's not right. I'm not sure he would have a vivid action. Why would he? Why would he? Just because through his employment he leaves property on his place of employment. I think that's different than arising from it. I don't think that stands for a but for his employment. Therefore, he would not have put it here. I think arising out of contemplates that it's because of the job itself that it was there. And he didn't put it on these computers. He didn't leave things on his desk because of his employment. It doesn't say pursuant to your employment relationship. It says arising out of your employment relationship. So is it your point, your position, then, that Bush is distinguishable and not really inapposite because it relates to matters that arise out of an employment relationship? Yeah, this was not something that was done because of his employment. But for his employment, absolutely. But for his employment, he wouldn't have been there physically. He wouldn't have used these computers. He didn't put anything there because of his employment, though. So I don't think this is something. I do think it would be distinguishable because it doesn't arise from it. If anything, it's despite of his employment. They allowed him to do it, so he did it, but not because of the employment relationship itself. Do you, what cases do you, Wyoming cases, do you rely on under the Westfall Act to establish respondent superior liability? For, I don't have any statistics for you right now. For respondent superior. But doesn't the analysis there turn on state law? For state law for respondent superior to see how it can be individually liable outside of that certification. I think we've alleged that he's acted outside the scope. I'm not asking what you alleged. I'm asking what authority you provided to support your allegation. And if you didn't provide it, that's a problem, isn't it? Well, we do know the statutes that prohibit what he is doing here, Mr. Halleck, in terms of personally prohibiting someone from acquiring their property. Am I missing something? I thought there was a state law component to the analysis under the Westfall Act. Isn't that right? If there is, I'm missing it, Your Honor. All right. Okay. The Civil Service Reform Act is focused on whether there are meaningful remedies available to employees or former employees for these types of discriminatory retaliatory claims. There's nothing under the Civil Service Reform Act here that would give Mr. Franken a remedy for recovering these actions. He's not suing to recover his property because of discrimination, retaliation, based on any of these categories. Well, I mean, a fair reading of your complaint, though, is that he has, I mean, because the first several pages talks about how there's been a campaign of discriminatory action against him and that he sued the government and that they actually settled their case with him and that as part of the settlement that they agreed to turn over all this stuff. Yes, that's background. Those aren't elements of his claims for conversion or his constitution. No, I understand that. But couldn't he get the same relief going through the administrative process, presumably? For the specific performance of the? Of turning over his stuff. A separate action for that? I don't believe so because I think that is outside the scope of what the Civil Service Reform Act would allow. He wouldn't be then suing on that contract because of discrimination or retaliation or any of those grounds. I think he'd have to pursue a separate claim for breach of contract. Would he be suing at all? I thought Judge Carson was talking about an administrative relief. I mean, he had a settlement, right? He reached a settlement on his discrimination claims and that included turning over his stuff. And why can't he seek specific performance of that through the administrative process? You didn't do what you told us you were going to do. I don't think that opportunity was available to him once he was no longer an employee. I think that's why he chose to pursue this route of conversion. They didn't abide by the terms of the agreement. And so, okay, I'm sorry, go ahead. They weren't going to. And then I think that he saw no other option than to go this conversion. So isn't maybe the proper cause here then if it's not an administrative proceeding, shouldn't he have sought to enforce the contract and sued under a breach of contract theory instead of a tort theory? I think he could have done that. Okay. Again, the terms of that settlement agreement are not public. I think it was confidential. I don't know if that gave him the right to do that. But, again, that would also be an action outside of the CSRA. And I don't think anything of – I think that's not an exclusive remedy either. I think, if anything, he can pursue this tort remedy and constitutional right remedy as well. So just as for qualified immunity and whether there's a clearly established right at issue here, I think it's beyond doubt that government employees cannot take stuff from employees. Police officers can't pull over motorists and take their money. I think that type of Fourth Amendment misappropriation of property makes clear that this is a violation of his rights. There is 10th Circuit authority that, like the Mayfield case, defines a dog as property. That can be the basis for a clearly established right to property that forms the basis for a Bivens claim. So I have two minutes left. I'd like to reserve it unless you have any questions. It's fine. May it please the Court, Counsel. My name is Nick Vassallo. I'm an assistant U.S. attorney in Cheyenne, Wyoming. And I represent the defendants in this case. And the defendants who are named in the caption are Yellowstone National Park, the Secretary of the Interior, and Dave Halleck individually. So Mr. Halleck, I represent in his individual capacity. That's the only capacity in which he's been sued. Based on what's been discussed so far, I wanted to say a few things about how we view this issue of property and what really is at stake here. What we're talking about is data. Data on a government computer. The plaintiff alleges that there was a policy at Yellowstone that allowed him to use the computer for personal purposes. That is a distinct question from whether that data is owned by the employee who is using the computer. Is there a statute or a regulation that speaks to ownership of data on government computers? Because of the stage at which this case was determined, it was a motion to dismiss. There's nothing in the record about that. We all work for government agencies. We're all aware that computer use is pretty heavily regulated. I don't want to get into extra record evidence. Well, telling us about the law wouldn't be outside the record evidence. I mean, it's just a question about what the state of the law is. I want to know if there's a regulation or a statute that speaks to ownership of data on government computers. I'm not aware of a regulation or a statute that speaks to that. But anyway, we look at it a little differently. And also, as far as whether what is being complained of here was a denial of access, the plaintiff just said it's not a denial of access, it's property. Actually, the denial of access was the revocation of continuing use of the computer because this plaintiff was being outprocessed. He was moving to a different agency. And his ability to use the computer was, of course, withdrawn because he was leaving. So it is a denial of access. I mean, that's what was implemented. His privileges were withdrawn, if you will. So we kind of look at it a little differently. Well, why doesn't somebody just drop his data down to a thumb drive and give it to him? I mean, why are we going through this exercise? Well, as is set forth in the complaint, that was attempted. They did. There were two events in which the agency gave him data or attempted to. The first one was where they mailed it to him on a thumb drive, and he claimed that when he got the envelope, there was nothing in the thumb drive. So then the agency uploaded it to essentially, I guess, a file sharing site. And he downloaded many, many files. But later on, he said, well, that wasn't all of them. And that's when the communications kind of ground to a halt. Is it your position that he has everything that was on the computer? It's my position that he never explained what was missing. He never said, I want this file, that file, that file. I can't say. There were like 5,000 files on the computer or something. I don't know that he wanted all of them, but there are some figures in the record, I think, as part of the complaint. And we're talking about voluminous files. We're talking about a lot of files. As far as scope of employment, Dave Hallock was sued individually under a tort theory of conversion. What you have to do in analyzing scope of employment under the Westfall Act is you do look to state law. And the Miller v. Rehman case, I believe, is the controlling authority there. The district court cited it. The district court analyzed it. Plaintiffs never even acknowledged the case, never attempted to fit the facts into the analysis that's set forth in that case. There are three factors you look at. One is whether the complaint of conduct is the kind that the employee, the supervisor in this case, is employed to perform. The second is whether it occurs substantially within authorized time and space limits. And the third is whether it's actuated at least in part by a purpose to serve the master. And if you apply those factors, all of the alleged facts are consistent with the conclusion that Mr. Hallock was acting within the scope of his employment. The conduct attributed to Hallock consists entirely of implementing decisions about a departing employee's access to files on a workplace government computer. It's hard to imagine any circumstance in which this kind of conduct could be outside the scope of employment. He could only engage in this conduct because of his position as a supervisor with the agency. Plaintiff alleges that Hallock acted in concert with others within the agency. That tends to show that he was actuated at least in part by a purpose to serve the employer. And there's no meaningful allegation here that Mr. Hallock was not acting within authorized time and space limits. There's nothing in the complaint to suggest that he was dealing with this issue from his home or anything like that. The denial of access was implemented before Mr. Franken came in on the Saturday, which he identifies as his last day of work. I can only guess that was because it was the end of a pay period. He had already been out-processed before that. How did he get in then? I don't know. That I don't have an answer to. But if I understand his complaint correctly, he says he came in on a Saturday and all of a sudden he couldn't get on his computer. Your brief talk, if I recall it correctly, talks about Mr. Franken's tort and Bivens' claims being preempted. Right. Isn't there really a different sort of analysis going on as it relates to the CRSA and Bivens? I mean, in the sense that Bivens, what we're talking about is whether there's room for a judicial remedy. That's not really the same as preemption, is it? Well, I think it's been discussed in terms of preemption. It's been discussed in terms of preclusion. One concept. Well, preclusion and preemption are different concepts, right? Well, I guess if an action is preempted, then you are precluded from pursuing it. Yeah, but the question that you're asking is whether Congress occupies the space with CRSA. That's not the question you're asking with Bivens. You're asking whether a judicial remedy would be necessary here to fill this gap, right? I agree that that is an appropriate analysis on the Bivens side. It's whether an action should be recognized in this context or whether there are special counselors factoring hesitation, which is exactly what Bush versus Lucas said there were. So I think the case is discussed in terms of preemption as well, because the CSRA has been held to preempt the field for disputes that arise, as you, Judge Holmes, already pointed out, arise from the federal employment context and occur only as a result of the federal employment. And that's what happened here. This could not have occurred but for federal employment. It arose because he used his federal computer at the workplace in a certain manner, and then when he was denied access, he wanted to get some government data. I don't see how you separate that from the workplace. And counsel stated that this case is not about retaliation or discrimination. If you read the complaint, the plaintiff refers to retaliation and discrimination throughout, in connection with every claim. And so I don't know how you could possibly say that. So all three factors under state law, the applicable factors, support a finding that Dave Allick was acting within the scope of his employment, and therefore the district court appropriately substituted the United States for him. And that takes care of the Westfall issue and the tort claim. So then we're left with the Bivens claim against Allick. And as we've already touched on, the CSRA precludes that claim. And Lombardi. Isn't all the argument about a Bivens claim sort of hypothetical anyway? Didn't the district court find that he had not pled a Bivens claim? Didn't he address it just sort of out of abundance of caution, type I'm going to construe it as a Bivens claim, because it was actually pled under 1983, wasn't it? Well, there were some claims that were pled specific, one claim that was pled specifically under 1983. The other claims alleged constitutional violations, and they were only brought against Allick. That's what they say. Right. In his individual capacity. He is only sued in his individual capacity. And the only thing that could be is a Bivens claim. Right. Okay. And the district court did analyze those under the Bivens framework. I think he also analyzed the section 1983 claim as well, as though it had been brought under Bivens. Now the Lombardi case, as Judge Holmes pointed out, sets forth a standard for preemption of Bivens claims. It's extremely broad. And we talked about the two elements of that. And then there are other cases, the Predlow case, and I can't remember the name of the other case now, that deal with FTCA actions and the preemptive effect or preclusive effect of the CSRA on those. I would say that the language in those cases is not as sweeping as Lombardi and Hill were in the Bivens context. The analysis there seems to focus a little more on whether the alleged conduct would constitute a violation of the CSRA, as opposed to a more global look at the employment context. But on either level, our position is that the conduct that's alleged here is clearly prohibited by the CSRA if it occurred the way that the plaintiff characterizes it. And there are several provisions in the CSRA that identify prohibited personnel practices that would apply here. One is Franken alleges the defendant's discriminated and retaliated against him on the basis of sexual orientation and promotion of equality. That's prohibited by 5 U.S.C. Section 2302B10, which says it's a prohibited personnel practice to discriminate for or against any employee on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others. The plaintiff also alleges that the defendant specifically targeted him based on his protected status. That would also come within 2302B10. He alleges that he was targeted and singled out by the defendants based on his sexual orientation and advocacy on behalf of rights for the LGBTQ community. Are you aware of does B10, would discrimination, could discrimination be manifested in a physical way in B10? In other words, if there was a sexual assault, it was discrimination. Would that be covered by B10 too? In terms of a sexual assault, I'm not sure it would. But here what we're talking about is withdrawal of access to a government computer. I know what we're talking about. I'm just trying to see what the limits of B10 would be. That's all. The limits of B10 would define the limits of your ability to bring a lawsuit against the government that would not be barred by the CRSA. So I'm just trying to get a sense of whether if it's sexually assaulted, whether he would still be barred from seeking relief because it would be preempted by the CRSA. I don't think so. I don't know the precise answer to that. But I guess the way I would look at it is that goes beyond discrimination. That's something else. That would be your view. You're not aware of any cases that have talked about that issue. I'm personally not. Okay. I'm aware that, well, I should say I think there probably are cases, but I did not examine them in preparation for this case. Okay. So we think 2302B10 applies here. There are also, well, I should say that plaintiff could have petitioned the Office of Special Counsel based on that provision. And the record is silent on whether plaintiff did or not. But as this Court's case has made clear, if it's something you can petition the Office of Special Counsel for, then you don't have a Bivens or FTCA remedy. Your time has expired. Thank you, Your Honor. Thank you. Thank you, Your Honors. First of all, that reference to Section 1983, mistake. We attempted to state Bivens' claim, which I think is clear throughout the language used in these different causes of action. Denial of access to this computer is only the first step. After that, these documents still existed out there. They acknowledged they were out there. They acknowledged that they were maintaining them. They acknowledged that they were not government property. So denial of access itself would probably be pursuable under the CSRA. This is post-termination or post-employment conversion. But all the claims arise out of that. If he had been able to access the computer when he went in, he would have presumably been able to download all this stuff, taken it with him, and we wouldn't be here. Presumably, yes. So going back to Miller's standard for the Westfall Act, two elements are that the work that this supervisor is performing, scope of employment is that it is of the kind he is employed to perform. He was not employed to keep documents that belonged to somebody else. Miller's standard that you had never at any point volunteered yourself, right? Yes. Okay. And is actuated, at least in part, by a purpose to serve the master. So we contend the conversion does not meet those standards. Can I ask you a question about your point about being denied leave to amend? What steps did you take to amend your complaint? Did you file a motion for leave to amend? Not after he dismissed the case of prejudice. Okay. Well, you didn't do it before then either, right? Pardon me? You didn't file one before then either. No, we didn't know how the court was going to interpret our case. And this was the first time a court did address the flaws it deemed it saw in our operative complaint. Thank you, Your Honors. Thank you. Case is submitted. Thank you, Counsel.